NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PAULINO and LYDITA ATANACIO, husband and wife, | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | : | **OPINION** |
| v. | : | Civil Action No. 06-CV-3523 (DMC) |
| NEW JERSEY MANUFACTURERS INSURANCE CO.; AETNA LIFE INSURANCE COMPANY; THE SAINT BARNABAS SYSTEM HEALTH PLAN; NEW JERSEY DEPARTMENT OF HEALTH and SENIOR SERVICES, | : | |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motions for summary judgment by Defendants Saint Barnabus Health Care System ("SBH") and Aetna Life Insurance Company ("Aetna"). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motions for summary judgment are **granted**.

I.     BACKGROUND[1]

On March 23, 2006, Plaintiff Paulino Atanacio ("Paulino") was injured in an automobile accident (the "Accident"), causing him to suffer spinal cord injuries, which left him

---

[1] The facts set-forth in this Opinion are taken from the Parties' uncontested FED. R. CIV. P. 56.1 statements in their respective moving papers. In Plaintiffs' Brief Opposing Defendants' Motions for Summary Judgment, Plaintiffs stated that "[t]here are virtually no facts here [] in dispute."

paralyzed from the chest down. The associated financial repercussions have also been severe.

Due to the severity of his injuries, Paulino required extensive medical care, modifications to his

home and a specially equipped van.

Paulino's primary insurance carrier is his auto insurance provider, Defendant New Jersey

Manufacturer's Company ("NJM"). His secondary insurance is provided by his employer,

Verizon Communications ("Verizon") and administered by Aetna. He is also covered by the SBH

Plan because his wife, Plaintiff Lydita Atanacio ("Lydita"), is a SBH employee.

At the time of the accident, Paulino was insured under an NJM personal automobile

policy. The Policy provided personal injury protection ("PIP") coverage as required by New

Jersey Statute. The NJM policy provides $250,000 coverage for catastrophic injury treatment for

the named insured. Catastrophic injury treatment is defined under the policy as medical expenses

incurred for treating:

> a. Permanent or significant brain injury, spinal cord injury or disfigurement;
> or
> b. Other permanent or significant injuries rendered at a trauma center or acute
> care hospital immediately following the accident and until the **insured**:
>> (1) is stable;
>> (2) no longer requires critical care; and
>> (3) can be safely discharged or transferred to another facility in the
>> judgment of the attending **health care provider.**

(PIP Endorsement.) In addition to medical benefits, the NJM policy also provides coverage for

non-medical expenses:

2

1. We will pay personal injury protection benefits to or for an **insured** who sustains **bodily injury**. The **bodily injury** must be caused by an accident arising out of the ownership, maintenance or use, including loading or unloading, of an **auto** as an automobile.

2. With respect to Personal Injury Protection Coverage, **insured** means:
    a. The **named insured** or any **family member** who sustains **bodily injury** while:
        (1) **occupying** or using an auto;

* * *

3. Subject to the limits shown in the Schedule or in the Declarations, personal injury protection benefits consist of the following:
    a. **Medical Expenses**
    Reasonable and necessary expenses incurred for:
    (1) Medical, surgical, rehabilitative and diagnostic treatments and services;
    (2) Hospital expenses;
    (3) Ambulance or transportation services;
    (4) Medication; and
    (5) Non-medical expenses that are prescribed by a treating **healthcare provider** for a permanent or significant brain, spinal cord or disfiguring injury. Non-medical expense means charges for:
        (a) Products and devices, not exclusively used for medical purposes or as durable medial equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures; and
        (b) Services and activities such as recreational activities, trips and leisure activities.

(PIP Endorsement.) The coverage provided under the NJM PIP Coverage Endorsement is primary, unless the named insured selects his health insurance as the primary insurance provider.

At the time of his accident, Paulino was employed by Verizon and was entitled to receive medical insurance benefits from Aetna or from Verizon, as administered by Aetna. The Verizon medical coverage is provided under a Verizon Managed Care Network. The Verizon plan provides

extensive medical care benefits for active employees without limitation. The Verizon plan addresses

how policies will apply when a patient is covered by more than one medical plan:

> If you or your eligible dependent is covered by more than one medical plan, special rules apply for determining who pays benefits first (the primary plan) and how benefits are determined when another plan is secondary (pays benefits after the primary plan). This section describes these rules.
>
> The coordination of benefits (COB) feature eliminates duplicate payments for the same service when you or your dependents are covered by more than one medical plan. When benefits coordinate, one plan will pay benefits first (the primary plan), another second (the secondary plan) and so on. This section does not apply to benefits payable under the prescription drug program.
>
> When the Verizon Managed Care Network and Medical Expense Plan for Mid-Atlantic Associates is primary, it pays benefits up to the limits described in the Summary Plan Description (SPD). When the Verizon Managed Care Network and Medical Expense Plan for Mid-Atlantic Associates is secondary, the claims administrator for this Plan subtracts the primary plan's payment from the actual amount charged. The Verizon Managed Care Network and Medical Expense Plan for Mid-Atlantic Associates' secondary payment and the primary plan's payment, added together, never will exceed the amount of actual charges (100 percent).
>
> Priority of Payment
>
> Under the Verizon Managed Care Network and Medical Expense Plan for Mid-Atlantic Associates' COB provisions, the order of payment is as follows:
>
> •   A plan that covers a patient as an active, inactive or former employee pays before a plan that covers a patient as a dependent.

(Verizon Plan, pages 103-05.) Lydita is employed by St. Barnabas Medical Center and was so on the

date of the Accident. As such, Lydita was a participant in the SBH System and she listed Paulino as

a dependent under the Plan. Lydita selected medical benefits under the SBH Plan and dental benefits under the traditional dental plan for her covered dependents. Lydita did not select either basic long-term disability or buy-up long term disability coverage for Paulino. The SBH Medical Benefits are set forth in the Benefit Program Summary Plan Description ("Plan"). The Plan sets forth a summary of the benefits. The SBH Plan excludes coverage for modification to a home or automobile to convert it to use by a disabled person. The Plan also addresses the primacy of coverage under the plan:

> If you have other medical or dental coverage available for yourself or a covered family member, that coverage will be taken into consideration when determining benefits under the SBHCS Medical Plan and Dental Plan. As a result, benefits may be reduced by any other benefits you are eligible to receive.
>
> When there is more than one plan available, SBHCS considers each plan separately when coordinating payments. In order to apply this provision, one of the plans is called the "primary plan." Depending on the covered individual "you, your spouse or your dependent", one of the plans will be designated the "primary" coverage and will be responsible for paying benefits first. The other will be considered "secondary" coverage.
>
> When your spouse has other employer-sponsored coverage and you are also covered by that plan, the chart shown in the next column of this page describes how SBHCS determines which plan is primary.
>
> If the SBHCS plan is secondary, benefits are coordinated so the total benefit you receive does not exceed what the SBHCS plan would have paid as a primary coverage. In other words, if the primary plan's benefit equals or exceeds what the SBHCS plan would have paid, you will not receive additional benefits.
>
> If you receive more than you should have when your benefits are coordinated, you are required to repay any overpayment.

(SBH Plan, page 70.) The plan includes a chart of the coordination of benefits stating, "If . . . your

spouse is the patient, then . . . your spouse's coverage is primary." (SBH Plan, page 70.) The plan

also addresses the order of insurance payments when medical benefits are sought for treating injuries

sustained in an automobile accident:

> If you need medical care as a result of a automobile related injury, the plan provides either primary or secondary coverage to "personal injury protection coverage" (PIP) provided as part of an automobile insurance policy issued in New Jersey. You choose which plan you want to be the primary payer when you sign up for automobile insurance.
>
> * * *
>
> The following benefits will be paid if the contract is secondary to PIP or OSAIC ("out of state automobile insurance coverage"):
>
> • The allowable expenses left uncovered after PIP or  OSAIC has provided coverage after applying cash deductibles and co-payment; or
>
> • The equivalent value of services if the contract had been primary.

(SBH Plan, page 71).

## II.    STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all

inferences in favor of the non-moving party, demonstrate that there is no genuine issue of

material fact and that the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P.

56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of

showing that there is no genuine issue of fact.  See id.  "The burden has two distinct components:

an initial burden of production, which shifts to the nonmoving party if satisfied by the moving

party; and an ultimate burden of persuasion, which always remains on the moving party."  Id.

The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

**III.    DISCUSSION**

    A.    Proper Order of Payment for the Medical Expenses

In this declaratory judgment action, Plaintiffs seek a determination that SBH must pay for Paulino's initial and on-going medical expenses and that Defendants are responsible for Paulino's medical expenses. Paulino is the beneficiary of insurance coverage/medical benefits provided by NJM, Verizon and SBH. Paulino is the named insured on NJM's personal auto policy and entitled to $250,000 of PIP benefits under that Policy. At the time of the Accident, Paulino was a full-time Verizon employee, and therefore entitled to medical benefits under the Verizon Managed Care Network and Medical Expense Plan. In addition, Lydita is employed at St. Barnabas Medical Center. She is enrolled in the SBH Program and she is entitled to medical benefits. Pursuant to the terms of these policies, the SBH Plan benefits are secondary to and pay

after those afforded to Paulino by his employer under the Verizon Plan. Furthermore, both employer sponsored medical benefit plans are secondary to, and pay after, the PIP benefits provided by the NJM Policy.

On March 23, 2006, Paulino suffered serious injuries in an automobile accident. As a result, he was treated for an extended period at University Hospital, followed by an extended rehabilitation period at the Kessler Institute. On the date of the accident, Paulino was insured by NJM under a Personal Auto Policy No. F951577-6 which was in effect for the period June 15, 2005 to June 15, 2006. The NJM policy provided PIP coverage as required by New Jersey statute, including $250,000 in medical expenses coverage for a named insured for catastrophic injury treatment. A catastrophic injury is defined in the NJM policy as medical expenses incurred for treatment of permanent or significant brain injury, spinal cord injury or disfigurement. Paulino, who has suffered paralysis from the chest down, is incurring medical expenses for the treatment of a spinal cord injury. Thus, he is entitled to $250,000 of PIP coverage from NJM.

When selecting his coverage, Plaintiff had the option of designating his health insurance as his primary coverage option. The NJM policy provides that health benefit plans, under which the named insured and any family member are insured, shall provide primary coverage for allowable expenses incurred by the named insured or any family member before any medical expense benefits are paid by NJM in the event that the named insured elected the medical expense benefits as secondary coverage. Plaintiff, however, did not elect primary coverage under his medical expense benefits option, so the NJM Plan is the primary coverage. NJM has accepted the primary responsibility for coverage under its Policy by paying Paulino's health care expenses.

8

At the time of his accident, Paulino was employed by Verizon. The Verizon Plan

provides extensive medical care benefits and addresses how policies will apply when more than

one medical plan covers a patient. In this regard, the Plan provides:

> If you or your eligible dependent is covered by more than one medical plan, special rules apply for determining who pays benefits first (the primary plan) and how benefits are determined when another plan is secondary (pays benefits after the primary plan). This section describes these rules. The coordination of benefits (COB) feature eliminates duplicate payments for the same service when you or your dependents are covered by more than one medical plan. When benefits coordinate, one plan will pay benefits first (the primary plan), another second (the secondary plan) and so on. This section does not apply to benefits payable under the prescription drug program.

> When the Verizon Managed Care Network and Medical Expense Plan for Mid-Atlantic Associates is primary, it pays benefits up to the limits described in the Summary Plan Description (SPD). When the Verizon Managed Care Network and Medical Expense Plan for Mid-Atlantic Associates is secondary, the claims administrator for this Plan subtracts the primary plan's payment from the actual amount charged. The Verizon Managed Care Network and Medical Expense Plan for Mid- Atlantic Associates' secondary payment and the primary plan's payment, added together, never will exceed the amount of actual charges (100 percent).

> * * *

> Priority of Payment Under the Verizon Managed Care Network and Medical Expense Plan for Mid-Atlantic Associates' COB provisions, the order of payment is as follows:
> • A plan that covers a patient as an active, inactive or former employee pays before a plan that covers a patient as a dependent.

(Verizon Plan, pages 103-05.) Thus, according to the Verizon Plan, the Verizon Plan is primary

for a patient that is an active, inactive or former employee and pays before a plan that covers a

patient as a dependent. The policy specifically addresses the order of payment providing that the

primary plan will pay benefits first.

Lydita was an employee of St. Barnabas Medical Center on the date of the accident and was a participant in SBH. Lydita obtained medical benefits pursuant to the Plan. Lydita listed Paulino as her spouse and a covered dependent. She selected medical and dental coverage for her covered dependents. Thus, Paulino is insured under the Plan for medical benefits as a dependent and under the Verizon Plan as any employee. The SBH Plan also addresses the order in which benefits will be paid:

> If you have other medical or dental coverage available for yourself or a covered family member, that coverage will be taken into consideration when determining benefits under the SBHCS Medical Plan and Dental Plan. As a result, benefits may be reduced by any other benefits you are eligible to receive.
>
> When there is more than one plan available, SBHCS considers each plan separately when coordinating payments. In order to apply this provision, one of the plans is called the "primary plan." Depending on the covered individual "you, your spouse or your dependent", one of the plans will be designated the "primary" coverage and will be responsible for paying benefits first. The other will be considered "secondary" coverage.
>
> When your spouse has other employer-sponsored coverage and you are also covered by that plan, the chart shown in the next column of this page describes how SBHCS determines which plan is primary.
>
> If the SBHCS plan is secondary, benefits are coordinated so the total benefit you receive does not exceed what the SBHCS plan would have paid as a primary coverage. In other words, if the primary plan's benefit equals or exceeds what the SBHCS plan would have paid, you will not receive additional benefits.
>
> If you receive more than you should have when your benefits are coordinated, you are required to repay any overpayment.

(Plan, page 70.) The plan includes a chart of the coordination of benefits stating, "If . . . your spouse

10

is the patient, then . . . your spouse's coverage is primary." (Plan, page 70.) Like the Verizon plan, the SBH Plan specifically provides that the "primary" coverage will be responsible for paying benefits first.

The Plan also addresses the order of insurance payments when medical benefits are sought for the treatment of injuries sustained in an automobile accident:

> If you need medical care as a result of an automobile related injury, the plan provides either primary or secondary coverage to "personal injury protection coverage" (PIP) provided as part of an automobile insurance policy issued in New Jersey. You choose which plan you want to be the primary payer when you sign up for automobile insurance.

> * * *

> The following benefits will be paid if the contract is secondary to PIP or OSAIC ("out of state automobile insurance coverage"):
> •      The allowable expenses left uncovered after PIP or OSAIC has provided coverage after applying cash deductibles and copayment; or
> •      The equivalent value of services if the contract had been primary.

(Plan, page 71.)

Thus, by the terms of both the Verizon and SBH Plans, Paulino is afforded primary health plan coverage by Verizon and secondary health plan coverage by SBH. The language of the relevant policy and plans show that primary coverage is provided by the NJM policy and secondary coverage is provided by the employer health plans. The SBH Plan recognizes that an insured may choose which plan he or she wants to be the primary payer when they sign-up for automobile insurance. (Plan, page 71.) Paulino selected NJM as his primary carrier for this loss and NJM must pay his expenses before either Verizon or SBH.

Between Verizon and SBH, Verizon provides primary coverage and pays first and SBH provides secondary coverage and pays second. Moreover, by its terms, SBH's Plan provides that if the primary health care plan benefit equals or exceeds the SBH plan benefit, Paulino will receive no additional benefits under the Plan. The benefits provided under Verizon's Plan will likely equal or exceed the benefits provided by the SBH Plan. Thus, the proper order of payment for Paulino's medical expenses is (1) NJM, (2) Verizon and then (3) SBH.

  B.    ERISA

  An "Employee Welfare Benefit Plan" is defined as:

> [A]ny plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

  Plaintiffs' claims are preempted by the Employer Retirement Income Security Act of 1974 as amended (ERISA), 29 U.S.C. § 1001, *et seq*. ERISA is the exclusive regulatory arena for employee welfare benefits plans. In <u>Metro. Life Ins. Co. v. Taylor</u>, the Supreme Court of the United States noted that "Congress may so completely preempt a particular area that any civil complaint raising something falling within this select group of claims is necessarily federal in character." 481 U.S. 58 (1987). In assessing congressional intent, the Court found § 502(a) of ERISA similar to the language in § 301 of the LMRA, which was found to have completely

12

preempted the plaintiff's state claim. See Avco v. Aero Lodge No. 735, Int'l Assoc. of Machinists & Aerospace Workers, 390 U.S. 557 (1968). ERISA was intended to provide the exclusive, uniform remedies for issues concerning Employee Welfare Benefit Plans. In this regard, ERISA completely preempts all state laws specifically designed to affect employee benefit plans. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983). Here, there is no doubt that Verizon's plan was established for "the purpose of providing its participants with medical, surgical or hospital care benefits." 29 U.S.C. § 1002(1). Accordingly, its benefit plan is subject to ERISA and decisons of the Plan administrator, AETNA, must not be disturbed or overturned by the court, unless the decisions(s) are "without reason, unsupported by substantial evidence or are erroneous as a matter of law." Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir. 1997); Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).

ERISA specifically provides that a civil action may be brought to recover benefits to enforce rights under the terms of the Plan or to clarify rights to future benefits pursuant to the terms of the Plan. See 29 U.S.C. § 1332 (a)(1)(B). As indicated, the Complaint does not seek a remedy permitted under ERISA. (Complaint ¶¶ 13, 17.) In New Jersey, insureds are also afforded the option of designating health insurance to be the primary source of PIP. See N.J.S.A. 39:6A-4.3. If an insured fails to make an election, the PIP carrier is automatically deemed as the primary source of medical benefits. Here, the Verizon Plan specifically states that it does not cover "Services or supplies covered under any federal or state 'no-fault' motor vehicle insurance provision that relates to medial treatment or other mandated insurance, regardless of whether the covered person properly asserts his or her rights under the motor vehicle contract." (Childress

13

Cert., pg. 96.)

The SBH Plan, established by an employer, was created to provide its participants, including Lydita, with medical, surgical and hospital care. Therefore, it is subject to ERISA and this Court must apply an "arbitrary and capricious" standard applicable to the denial of any ERISA benefits to Plaintiffs. Under the arbitrary and capricious standard applied to review decisions of ERISA benefit administrators, this Court must defer to the claims administrator's decision, unless that decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Rizzo v. Paul Ravere Ins. Group, 925 F. Supp. 302, 310 (D.N.J. 1996). Here, SBH has denied claims submitted for Paulino's medical treatment as Lydita's covered dependent on the basis of the Plan's terms, making its coverage excess to that provided by NJM and under the Verizon plan. This Court is not free to substitute its own judgment for that of SBH to determine the proper eligibility of plan benefits. See id. Therefore, SBH's decision to deny Paulino's benefits, pending exhaustion of benefits under the NJM policy and Verizon plan, must be upheld. Furthermore, the terms of the policies establish the order in which benefits are provided. Also, the denial of benefits under the employer-sponsored ERISA plans must be afforded the arbitrary and capricious review standards applicable to such plans.

**IV.    CONCLUSION**

For the reasons stated, it is the finding of this Court that Defendants SBH's and Aetna's

motions for summary judgment are **granted**.  An appropriate Order accompanies this Opinion.


_____    S/ Dennis M. Cavanaugh
_____Dennis M. Cavanaugh, U.S.D.J.

Date:          December 12, 2007
Orig.:         Clerk
cc:            All Counsel of Record
               Hon. Mark Falk, U.S.M.J.
               File